IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| LEONARD GOMES, JR., | ) | Civ. No. 12-00311 SOM/BMK |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER GRANTING MOTION FOR |
| vs. | ) | SUMMARY JUDGMENT |
| | ) | |
| BANK OF AMERICA, N.A.; BAC | ) | |
| HOME LOANS SERVICING, LP; | ) | |
| JOHN AND MARY DOES 1-10, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

This removed action arises out of an attempt by Plaintiff Leonard Gomes, Jr., to obtain a modification of a $654,500 loan. Gomes's First Amended Complaint asserts claims of negligence and of violating section 480-2 of Hawaii Revised Statutes based on the handling of his loan modification application.

On March 15, 2013, Defendants filed a motion for summary judgment. See ECF No. 42. That motion is granted.

I.      **BACKGROUND.**

In 2007, the National Bank of Kansas City loaned Gomes $654,500. This loan was secured by a note, ECF No. 43-5, and a mortgage on his residence, ECF No. 43-6. In 2010, the loan was assigned to Deutsche Bank National Trust Company, Trustee of BCAP LLC Trust 2007-AA4. See ECF No. 43-7. Gomes's loan was serviced by Defendant BAC Home Loans Servicing, LP. See 43-8 (notice of

intent to foreclose); Declaration of Michele C. Sexton ¶¶ 2, 6, ECF No. 43-4.

The original Complaint asserted causes of action for negligence and unfair and deceptive acts in violation of section 480-2 of Hawaii Revised Statutes.  Id.  As detailed in Judge David Alan Ezra's order of July 25, 2012, Gomes alleged that he attempted numerous times to modify his loan, only to be told that his loan needed to be in default before it could be modified.[1] Judge Ezra ruled that Gomes had alleged sufficient facts to support a negligence claim given BAC Servicing's duty to Gomes to process his loan modification application.  See ECF No. 14. Although lenders and loan servicers generally owe borrowers no duty of care giving rise to any negligence claim, Judge Ezra ruled that the allegations suggested that BAC Servicing had exceeded its role as a conventional loan servicer.

On August 8, 2012, Gomes filed a First Amended Complaint.  This document adds factual allegations concerning Gomes's alleged damages.  In the original Complaint, Gomes had merely alleged that his credit score had been damaged and that he might have sold his property but for being told he qualified for a Home Affordable Modification Program ("HAMP") loan modification.  See Complaint ¶¶ 95 and 97, ECF No. 1-2.  In the

---

[1]This case was reassigned to this judge after Judge Ezra transferred his duty station.  See ECF No. 17.

2

First Amended Complaint, Gomes adds that, because of the bad marks on his credit report, he had to provide a $20,000 security deposit and $100,000 mortgage on behalf of his construction company. <u>See</u> First Amended Complaint ¶ 103.  He says he also paid a higher interest rate on a loan he obtained for a truck purchase because of his allegedly damaged credit score.  <u>Id</u>. ¶ 104.

Gomes complains that Bank of America told him that, to be considered for a loan modification, he had to be delinquent. He testified in his deposition, however, that after that statement was made, he continued to make payments on his mortgage and only stopped paying his mortgage when he ran out of money. <u>See</u> Deposition of Leonard Gomes, Jr., at 70-71, ECF No. 43-3.

In his deposition, Gomes admitted to having had money trouble since the fall of 2008.  In September or October 2008, Gomes had an approximate principal balance of $90,000 on his Wells Fargo credit card.  When he fell 30 days behind in his payments, Wells Fargo offered him a 15% reduction in the principal and a no-interest 7-year payment plan to pay it off. Gomes concedes that that modification affected his credit score. <u>See</u> Gomes Depo. at 18-19.

Gomes says that, given the many mortgage payments he has, he cannot say what the balance is on each one.  <u>See id.</u> at 29.  He says that, in a good year, his construction business made

about $120,000.  Id. at 24.  At one point, he had six mortgages on five properties.  Id. at 63.  He testified in his deposition that, in August of 2009, he was in default on three mortgages. He testified that each default negatively affected his credit score.  Id. at 64-65.

For example, Gomes testified that he defaulted on a $500,000+ mortgage in August 2009, when he was delinquent for four months.  Id. at 29-30.  Gomes testified that, although he brought that loan current, he defaulted again in December 2011 and made no further payment on that loan as of the time of his deposition in February 2013.  Id. at 30-31.  Gomes conceded that the default affected his credit score.  Id. at 31-32.

Gomes testified that he also defaulted on a $400,000+ loan with American Savings Bank in August 2009.  See id. at 33. He says that he became current on that loan in April 2010.  Id. at 34.  He concedes that this default affected his credit score. Id.

In testifying about the 2007 $650,000+ loan at issue in this case, Gomes said that he had obtained prior loans and understood that, if he defaulted on his payments, his credit score would be affected.  See id. at 41-42.  Michele C. Sexton of Bank of America testified that Bank of America was the loan servicer for Gomes's loan, number xxxxx5420, for the property on Hokulani Street.  See Sexton Decl. ¶¶ 2, 6, ECF No. 43-4.  Since

4

October 31, 2012, the loan servicer of Gomes's loan has been Specialized Loan Servicing.  Id. ¶ 6.

Gomes testified that, since July 2009, he has made no payments on his loan because he has been unable to do so for financial reasons.  See Gomes Test. at 66 ("Q: And as of today, you haven't made any payments on this loan since 2009, is that correct?  A: That's correct.  Q: Is that simply because you haven't had the ability to make those payments since 2009?  A: Correct.") and at 51 (indicating that Gomes made no payments from July 2009 to August 2010 because he was financially unable to do so).

On September 16, 2009, Bank of America mailed Gomes a Notice of Intent to Accelerate.  See ECF No. 43-8.  To cure the default, Gomes was allegedly told he had to pay $9,229.58, which included the monthly charges and late fees owed.  Id.  By the time the notice was sent to Gomes, Gomes had allegedly submitted two loan modification requests, one on May 2, 2009, and another on August 28, 2009.  Gomes says he did not hear back from Bank of America on either of these requests.  See Affidavit of Leonard Gomes, Jr., ¶¶ 4-6, ECF No. 47-1.

On September 24, 2009, Gomes allegedly called Bank of America and spoke with "Sarah."  Gomes says that Sarah took his financial information over the phone and told him that she would send out another loan modification application.  Id. ¶ 8.

In December 2009, Gomes allegedly received a debt
collection notice from Bank of America's attorneys, Routh
Crabtree Olson.  This notice told Gomes that the law firm had
been retained to initiate foreclosure proceedings.  See id. ¶ 10.
Gomes says that, in response, he sent updated financial
information to Bank of America on December 20, 2009.  Id. ¶ 11.

Gomes says that, on or about January 20, 2010, he
called Bank of America and spoke with "James."  Gomes says that
James told him that, based on the financial information Gomes had
given James, he would be approved for a HAMP loan modification,
provided he could send documentation substantiating the financial
information.  See Gomes Aff. ¶¶ 12-13.

On February 19, 2010, Gomes allegedly received a letter
from Bank of America's lawyer that confirmed that his loan was
being reviewed for modification.  Id. ¶ 15.  Bank of America also
confirmed that review in a letter Gomes says he received on April
16, 2010.  Id. ¶ 16.  On May 13 and June 18, 2010, Gomes
allegedly called Bank of America.  Both times, the bank allegedly
told Gomes that his application was still under review.  Id.
¶¶ 17-18.

However, when Gomes called Bank of America on July 29,
2010, he was allegedly told that his file had been closed, either
because of insufficient information or for some unspecified
reason.  Id. ¶ 19.  Gomes says that, on August 2, 2010, Bank of

America told him again that he had been approved for a HAMP loan modification based on information provided over the phone, but that the modification would be contingent on substantiation of his financial position.  Id. ¶ 20.

On August 13, 2010, Bank of America allegedly sent Gomes a letter that told him that he may be eligible for a HAMP loan modification.  See ECF No. 43-9.  The letter encouraged Gomes to apply for the HAMP modification if he met certain criteria.  Id.

On August 23, 2010, Deutsche Bank, the relevant mortgagee, sent Gomes a notice of its intention to foreclose. See ECF No. 43-10.  A foreclosure auction was scheduled for November 29, 2010.  This document was filed in the State of Hawaii Bureau of Conveyances as Document Number 2010-121802.  Id.

On September 28, 2010, Gomes allegedly called Bank of America again.  This time he allegedly spoke with "Doris."  Gomes says that Doris told him that his loan modification had been approved and that he should receive a modification agreement within 30 days.  Id. ¶ 22.

Gomes says that, when he did not receive the loan modification agreement by November 8, 2010, he hired his own attorney, David McCreight.  McCreight got the foreclosure auction postponed from November 29, 2010, to January 4, 2011.

7

Gomes says that, on November 12, 2010, "Svetlana Martynova" of Bank of America called him, asking that he sign a certified copy of his financial statements. See Gomes Aff. ¶ 25. Gomes says he immediately did so and faxed the material back to Bank of America. Id. Gomes says that, on November 17, 2010, Martynova sent him an e-mail, saying that his file was being transferred to the "Closing Department" and that he could expect to receive the HAMP modification agreement within the next 30 to 40 days. See Gomes Aff. ¶ 26.

On January 26, 2011, instead of sending a HAMP modification agreement, Bank of America allegedly sent Gomes a letter telling him that his request for a loan modification under HAMP had been denied. See ECF No. 43-11. The letter informed Gomes that he was not eligible for a loan modification because he had a negative Net Present Value ("NPV"), meaning that, based on information that included the amount of the loan and Gomes's income, it was not in the interest of the mortgagee to modify the loan. Id.

On June 10, 2011, McCreight and Gomes met with "Maria" of Bank of America to give the bank Gomes's most recent financials and to offer $20,000 as a settlement towards the loan modification. See Gomes Aff. ¶ 34. Gomes says that he was told that it was very likely that he would be approved for a loan modification. Id.

On June 16, 2011, Bank of America sent Gomes a letter informing him that he was eligible for a trial modification. Under the "Trial Period Plan," his first payment of $5,039.12 was due no later than 30 days after August 21, 2011.  The letter informed Gomes that, after he successfully made three payments, the bank would contact him to discuss a permanent modification. See ECF No. 43-14.  Gomes says that he could not take advantage of that offer because he lacked that kind of money.  Id. at 86-87.  The same was true with respect to a proposal of June 17, 2011, which involved a three-month payment plan of $9,533.91 per month, in addition to a lump sum payment of $103,980.17.  See ECF No. 43-13.  Gomes says that he was confused by the two simultaneous offers, see Gomes Aff. ¶ 40, but concedes that he could not accept either of these offers because he could not afford either.  See Gomes Test at 87-88.  Nothing in the record indicates what Gomes could have afforded.

II.          **SUMMARY JUDGMENT STANDARD.**

Summary judgment shall be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a) (2010).  See Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).  The movants must support their position that a material fact is or is not genuinely disputed by either "citing to particular parts of materials in the record,

9

including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials"; or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c). One of the principal purposes of summary judgment is to identify and dispose of factually unsupported claims and defenses. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial. See id. at 323. A moving party without the ultimate burden of persuasion at trial--usually, but not always, the defendant--has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment. Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc., 210 F.3d 1099, 1102 (9th Cir. 2000).

The burden initially falls on the moving party to identify for the court those "portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323). "When the moving party has carried its burden

under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (footnote omitted).

The nonmoving party must set forth specific facts showing that there is a genuine issue for trial.  T.W. Elec. Serv., Inc., 809 F.2d at 630.  At least some "'significant probative evidence tending to support the complaint'" must be produced.  Id. (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 290 (1968)).  See Addisu, 198 F.3d at 1134 ("A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact.").  "[I]f the factual context makes the non-moving party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." Cal. Arch'l Bldg. Prods., Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1468 (9th Cir. 1987) (citing Matsushita Elec. Indus. Co., 475 U.S. at 587).  Accord Addisu, 198 F.3d at 1134 ("There must be enough doubt for a 'reasonable trier of fact' to find for plaintiffs in order to defeat the summary judgment motion.").

All evidence and inferences must be construed in the light most favorable to the nonmoving party.  T.W. Elec. Serv., Inc., 809 F.2d at 631.  Inferences may be drawn from underlying

11

facts not in dispute, as well as from disputed facts that the
judge is required to resolve in favor of the nonmoving party.
Id.  When "direct evidence" produced by the moving party
conflicts with "direct evidence" produced by the party opposing
summary judgment, "the judge must assume the truth of the
evidence set forth by the nonmoving party with respect to that
fact."  Id.

**III.     ANALYSIS.**

        **A.     Judge Ezra Ruled That the Facts Alleged Supported
           a Claim That, Having Exceeded the Scope of a
           Normal Lender, Bank of America Breached a Duty to
           Process Gomes's Loan Modification Application.**

        Without acknowledging an earlier ruling by Judge Ezra,
see ECF No. 14, Bank of America reargues a position rejected by
Judge Ezra before the case was reassigned to this judge.  Judge
Ezra denied a motion to dismiss by Bank of America.  The bank had
argued that Gomes's claim based on its alleged mishandling of (or
failure to process) his application for a loan modification
failed because the bank owed no duty to Gomes in that regard.
Judge Ezra ruled that a bank that goes beyond the role of a
traditional lender, as he concluded Gomes's allegations suggested
Bank of America had done with respect to a loan modification, did
indeed have a duty to process the loan modification application.
Instead of starting with Judge Ezra's ruling, Bank of America
says, in the papers now before this court, "Plaintiff's
negligence claim fails because BANA [Bank of America] did not owe

Plaintiff a duty when processing his loan modification."   ECF No. 42-1 at 10.

At the hearing on the present motion, Bank of America said that its earlier motion had sought dismissal, while the present summary judgment motion is based on actual evidence.   But that evidence does not undermine the factual allegations that Judge Ezra relied on!   Nothing the bank submits in support of its summary judgment motion goes to how the bank mishandled (or failed to handle) Gomes's HAMP application.   Instead, the present motion presents evidence as to whether its alleged actions caused Gomes any injury.   That is, the evidence goes to the results of the alleged breach of a duty, not the existence of that duty.

This judge is not saying that Judge Ezra's recognition of a duty is not subject to challenge.   Certainly Judge Ezra was defining the role of a traditional lender in a manner that might be debated.   This judge might or might not have reached a different conclusion.   But what Bank of America may not do is proceed as if Judge Ezra's ruling does not exist.   This court declines to allow Bank of America to, in effect, seek reconsideration with the present motion.

**B.  Summary Judgment is Granted in Favor of Bank of America With Respect to the Negligence Claim Because Gomes Fails to Raise a Genuine Issue of Fact As to Whether the Alleged Breach of Duty Caused Gomes Harm.**

Although the court has declined to revisit Judge Ezra's ruling as to the existence of a duty, it nevertheless grants Bank of America summary judgment with respect to the negligence claim on the ground that Gomes establishes no breach of duty.

To prevail on his negligence claim, Gomes must prove, in addition to the existence of a duty or obligation on the part of a bank to conform to a certain standard of conduct, that Bank of America failed to conform to that standard (i.e., breached that duty), that there was a reasonably close causal connection between the conduct and the resulting injury, and that Gomes suffered actual loss or damage.  See Takayama v. Kaiser Found. Hosp., 82 Haw. 486, 498-99, 923 P.2d 903, 915-16 (1996).

In connection with another motion to dismiss, this judge ruled that Gomes had alleged that he suffered damages arising out of the alleged breach of duty in that, because his credit score was further damaged, he had to provide a $20,000 security deposit on a $100,000 mortgage and had to pay a higher interest rate on a car loan.  See ECF No. 29 at 5.  On this motion, Bank of America challenges Gomes's ability to raise a question of fact as to whether it actually caused him such damages.

14

Although it may be questioned whether, given his many loan delinquencies, Gomes's failure to modify his loan adversely affected his credit score, the court makes that assumption for purposes of this motion.  The court nevertheless agrees that Gomes fails to raise a genuine issue of fact as to whether he suffered damages flowing from any failure by the bank to process his loan modification applications.

Gomes does not and could not state what the terms of any acceptable loan modification would have been.  He admits that, with respect to Bank of America's two offers to modify his loan, he could not have afforded their terms.  The evidence before this court indicates that, since August 2009, Gomes has lacked the finances to pay his loans.  Nothing in the record indicates that he would have been able to comply with the terms of any loan modification offered him.  In other words, even assuming that Gomes's credit score was damaged when the bank failed to process his loan modification requests, Gomes fails to show that he would have been able to avoid that damage to his credit score had his loan modification applications been processed but ultimately resulted in no modification.  Under these circumstances, Gomes fails to show that Bank of America's alleged failure to process his loan modification requests caused him to sustain any damage.

15

C.   **Chapter 480 Claim.**

Gomes claims that Bank of America violated section 480-2 of Hawaii Revised Statutes, which states, "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful."  Haw. Rev. Stat. § 480-2.  Two distinct causes of action exist under section 480-2: claims alleging unfair methods of competition and claims alleging unfair or deceptive acts or practices.  See Haw. Med. Ass'n v. Haw. Med. Serv. Ass'n, 113 Haw. 77, 110, 148 P.3d 1179, 1212 (2006).  Gomes is asserting a claim of unfair or deceptive acts or practices.

The phrase "unfair or deceptive acts or practices in the conduct of any trade or commerce" is not defined in chapter 480.  See Eastern Star, Inc. v. Union Bldg. Materials Corp., 6 Haw. App. 125, 132, 712 P.2d 1148, 1154 (Haw. App. 1985).  Hawaii courts have held that a "practice is unfair when it offends established public policy and when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers."  Id. at 133, 712 P.2d at 1154 (citations omitted).  A deceptive act is defined as "an act causing, as a natural and probable result, a person to do that which he would not otherwise do."  Id.  A plaintiff establishes that there was "deception" under chapter 480 by demonstrating that there was: (1) a representation, omission, or practice that (2) was likely to

16

mislead consumers acting reasonably under the circumstances when (3) the representation, omission, or practice was material. Tokuhisa v. Cutter Mgmt. Co., 122 Haw. 181, 195, 223 P.3d 246, 260 (2009). A representation, omission, or practice is "material" if it involves information that is important to consumers and is likely to affect their conduct regarding a product. Id. Whether an act or practice is deceptive is judged by an objective "reasonable person" standard. Yokoyama v. Midland Nat'l Life Ins. Co., 594 F.3d 1087, 1092 (9th Cir. 2010) ("Hawaii's consumer protection laws look to a reasonable consumer, not the particular consumer.").

Any consumer injured by an unfair or deceptive act or practice forbidden by section 480-2, may sue for damages under section 480-13, which states:

> (a) Except as provided in subsections (b) and (c), any person who is injured in the person's business or property by reason of anything forbidden or declared unlawful by this chapter:
>
> (1) May sue for damages sustained by the person, and, if the judgment is for the plaintiff, the plaintiff shall be awarded a sum not less than $1,000 or threefold damages by the plaintiff sustained, whichever sum is the greater, and reasonable attorney's fees together with the costs of suit; provided that indirect purchasers injured by an illegal overcharge shall recover only compensatory damages, and reasonable attorney's fees together with the costs of suit in actions not brought under section 480-14(c); and

17

(2) May bring proceedings to enjoin the unlawful practices, and if the decree is for the plaintiff, the plaintiff shall be awarded reasonable attorney's fees together with the costs of suit.

(b) Any consumer who is injured by any unfair or deceptive act or practice forbidden or declared unlawful by section 480-2:

(1) May sue for damages sustained by the consumer, and, if the judgment is for the plaintiff, the plaintiff shall be awarded a sum not less than $1,000 or threefold damages by the plaintiff sustained, whichever sum is the greater, and reasonable attorney's fees together with the costs of suit; provided that where the plaintiff is an elder, the plaintiff, in the alternative, may be awarded a sum not less than $5,000 or threefold any damages sustained by the plaintiff, whichever sum is the greater, and reasonable attorney's fees together with the costs of suit. In determining whether to adopt the $5,000 alternative amount in an award to an elder, the court shall consider the factors set forth in section 480-13.5; and

(2) May bring proceedings to enjoin the unlawful practices, and if the decree is for the plaintiff, the plaintiff shall be awarded reasonable attorney's fees together with the costs of suit.

Gomes says that he is seeking damages under both section 480-13(a) and section 480-13(b).  To prevail on a claim under section 480-13(a), Gomes must establish: "(1) a violation of chapter 480; (2) which causes an injury to the plaintiff's business or property; and (3) proof of the amount of damages." Davis v. Four Seasons Hotel Ltd., 122 Haw. 423, 435, 228 P.3d 303, 315 (2010) (internal citations and alterations omitted).  On

18

the other hand, to prevail on a claim under section 480-13(b), Gomes must show that he or she is a consumer who was injured within the meaning of section 480-2.  Id. at 441, 228 P.3d at 322.  Section 480-1 defines "consumer" as "a natural person who, primarily for personal, family, or household purposes, purchases, attempts to purchase, or is solicited to purchase goods or services or who commits money, property, or services in a personal investment."

As Bank of America argues, private damages are necessary to support a request for damages under both subsections of section 480-13.  In Robert's Hawaii School Bus, Inc. v. Laupahoehoe Transportation Company, 91 Haw. 224, 254, n.30, 982 P.2d 853, 883 n.30 (1999), the Hawaii Supreme Court quoted Ai v. Frank Huff Agency, Ltd., 61 Haw. 607, 618, 607 P.2d 1312 (1980), for the proposition that, "[w]hile proof of a violation of chapter 480 is an essential element of an action under § 480-13, the mere existence of a violation is not sufficient ipso facto to support the action; forbidden acts cannot be relevant unless they cause private damage."  Both Robert's Hawaii and Ai involved an earlier version of section 480-13(a), but both versions contained language identical to the present version, allowing any person "who is injured in the person's business or property by reason of anything forbidden or declared unlawful by this chapter to sue for damages sustained by the person, and, if the judgment is for

19

the plaintiff, the plaintiff shall be awarded a sum not less than $1,000 or threefold damages by the plaintiff sustained, whichever sum is greater . . . ." See Robert's Hawaii, 91 Haw. at 248, 982 P.2d at 877 (quoting the 1992 version of section 480-13(a)) (internal alterations omitted); Haw. Rev. Stat. § 480-2 (Michie 2012).

In Robert's Hawaii, the Hawaii Supreme Court rejected an argument that section 480-13(a) was an automatic damages provision because it refers to statutory damages of $1,000. Instead, the court stated that the plain language of the statute requires some evidence of damages. 91 Haw. at 254, n.30, 982 P.2d at 883 n.30.

Because section 480-13(b) has language identical to that in section 480-13(a), although "consumer" is substituted for "person," this court has no reason to think that the Hawaii Supreme Court would treat that language differently with respect to the damages requirement.

In his Opposition and at the hearing, Gomes clarified that he is asserting his chapter 480 claim based only on Bank of America's alleged misrepresentations concerning:  1) Gomes's qualification for a HAMP modification; 2) Gomes's approval for a HAMP modification; 3) promised notification to Gomes concerning a HAMP trial period plan; and 4) Gomes's simultaneous receipt of two loan modifications.  Gomes has therefore waived any other

20

possible basis or bases for his section 480-2 claim.  Even if the court assumes that these four acts are unfair or deceptive for purposes of section 480-2, Bank of America is entitled to summary judgment on the claim because, as discussed above in the section on Gomes's negligence claim, he fails to demonstrate that he suffered damages relating to the loan modification process.  Because damages are required by section 480-13, summary judgment is granted to Bank of America on the chapter 480 claims.

**IV.      CONCLUSION.**

   For the foregoing reasons, Defendants' motion for summary judgment is granted.  The Clerk of Court is directed to enter judgment in favor of Defendants and to close this case.

   IT IS SO ORDERED.

   DATED: Honolulu, May 15, 2013.



     /s/ Susan Oki Mollway
     Susan Oki Mollway
     Chief United States District Judge

Leonard Gomes, Jr. v. Bank of America et al., Civ. No. 12-00311 SOM/BMK; ORDER GRANTING MOTION FOR SUMMARY JUDGMENT